IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wanda Jean Robinson, | ) | Civil Action  No. 5:14-2391- KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision, as discussed herein.

I.      Relevant Background

A.      Procedural History

Plaintiff protectively applied for SSI benefits on May 31, 2011, alleging a disability-onset date of January 1, 2010.[1] Tr. 101-07. Plaintiff's claims were denied initially and on reconsideration. Tr. 51-52. Plaintiff requested a hearing before an administrative law judge ("ALJ"), Tr. 78, and a hearing was held on February 13, 2013, Tr. 437-78. The ALJ was unable to reach a decision as to Plaintiff's residual functional capacity ("RFC") based on the record

---

[1] The SSI Application is dated June 7, 2011, Tr. 101; Plaintiff's protective filing date is May 31, 2011, *see* Tr. 137.

available at the February 2013 hearing, and, after receiving additional medical records, conducted another hearing on June 13, 2013. Tr. 411-36. In a decision dated July 11, 2013, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 87-100. The Appeals Council granted Plaintiff's request for review of the ALJ's decision, considered additional documents, and issued a corrective decision on May 9, 2014. Tr. 8-11. In that decision, the Appeals Council determined a different RFC for Plaintiff but also determined she was not disabled within the meaning of the Act. *Id.* On June 16, 2014, Plaintiff brought this action seeking judicial review of the Commissioner's decision.  ECF No. 1.

B.      Plaintiff's Background

Plaintiff was born in February 1966, and was 43 years old on January 1, 2010, the date of her alleged disability onset, and 47 years old on June 13, 2013, the date of the second hearing before the ALJ. *See* Tr. 137. Plaintiff graduated from high school. Tr. 149. Plaintiff seeks SSI because of rheumatoid arthritis, back pain, and knee problems. Tr. 148, 158, 169-73.

C.      The Administrative Proceedings

1.      The February 13, 2013 Administrative Hearing

Plaintiff appeared, along with her counsel, at the February 13, 2013 administrative hearing. Vocational Expert ("VE") Kathleen Robbins was also present at the hearing.

Plaintiff testified that she lived in a household with her two daughters, ages 18 and 23, and her 27-year-old niece. Tr. 444-45. She is supported by her daughters' incomes. Tr. 446. Plaintiff stated she had not worked since her January 2010 alleged onset-of-disability date, and that her last employment had been with Arby's in 2009. Tr. 445. Plaintiff stated she had been terminated from her last job because she "was complaining too much" about her back and knees and could not lift the things she was supposed to lift. Tr. 445. Plaintiff further indicated she was

no longer working because she could not stand to run the register and could not lift five pounds. Tr. 446. Plaintiff stated she had problems with both of her knees, including swelling and pain. She stated she tried to keep her knees elevated and used Biofreeze, which helped "a little bit" with the swelling and pain. Tr. 447-48. Plaintiff noted she had received shots in her knees "a lot," but they provided only temporary relief by lessening the pain for "two weeks at the most." Tr. 448. Plaintiff indicated she had swelling in her knees every day, and the swelling was worse in the right knee. Tr. 449.

Plaintiff noted she had fallen out of a chair "years ago" when working at Ryobi. Tr. 463. She said she fell on her bottom and side and hit her right knee on a table. She stated that was when her knee first began bothering her. *Id.*

Plaintiff described a typical day as getting up in the morning, sitting and watching some television, and trying to exercise. Tr. 449. She said one doctor advised her she would feel better if she could walk (for exercise) and another doctor advised walking was not good for her. *Id.* At any rate, Plaintiff indicated she could not walk more than 200 feet before her legs and knees require her to stop. *Id.* She noted she would try to walk the approximately 200 feet to her mother's home each day, but that some days she was unable to do so. Tr. 449-50. She said when she did walk, she walked at a very slow pace because her knee would "feel like it's going to pop out of place." Tr. 450.

Plaintiff testified that she could sit no more than 30 minutes before needing to move around because of pain in her back. Tr. 450. One of her doctors told her the bottom of her back was so full of arthritis that it caused her legs to hurt. Plaintiff noted her doctors felt she was too young to receive a knee replacement, although she did not understand why. *Id.*

Plaintiff indicated she sometimes used a cane, particularly when walking to her mother's home. Tr. 451. She said she did not use it inside her house, but just held on to chairs. *Id.* Plaintiff stated she had brought a cane with her to the hearing but had left it in the car. Tr. 451-52.

Plaintiff testified that her daughter had driven her to the hearing and usually drove her to doctor's appointments. Her daughters and niece did all of the shopping. Tr. 452. Plaintiff stated it bothered her to be in a car with her knees bent and noted she could not walk in a store. Tr. 452-53. Plaintiff's daughters and niece also did the cooking and most housework. Tr. 453. Plaintiff said she made her bed and sometimes cleaned parts of the bathroom. Tr. 454. She said she was able to shower independently by using rails that were in her shower and that she could dress herself. *Id.*

Plaintiff said she had no hobbies and that her arthritis in her hands kept her from braiding friends' hair like she used to do. Tr. 455. She said she left the house to go to church on some Sundays, but that she sometimes could not sit through the service. *Id.* Plaintiff indicated the arthritis in her hands caused pain and aches in the joints of her hands and fingers. *Id.* Plaintiff said she soaked her hands in Epsom salt about three times per day and that the soaking loosened her hands and let her be able to bend them. Tr. 464.

When asked about her medications for pain, Plaintiff said that Lortab helped her pain more than any other medication the doctors had tried. Tr. 456. She said she was allergic to tramadol[2] and refused it when one doctor suggested that she try it. Tr. 457. Plaintiff indicated she took baclofen and three types of medication for high blood pressure. Tr. 458-59. She also took albuterol for breathing and sinus issues. Tr. 459-60. Plaintiff said she had quit smoking two years prior and did not drink or take illegal drugs. Tr. 460. She said that when she took Celebrex she

---

[2] Tramadol is a narcotic-like pain reliever. http://www.drugs.com/tramadol.html (last visited Aug. 19, 2015).

became dizzy and would have to lie down. Tr. 460. When she took muscle relaxers, they made her sleepy. Tr. 460-61. She indicated she took the muscle relaxers twice per day. Tr. 461.

Plaintiff noted she had trouble sleeping because she could not get comfortable in bed. Tr. 461. Sometimes she used heat or ice for her pain. Tr. 461-62.

At the time of the February 2013 hearing, Plaintiff indicated she weighed 240 pounds and was five-feet-eleven-and-one-half-inches tall. Tr. 446. She said her weight was up and that a normal weight for her would be around 200 or 230 pounds. *Id.* Plaintiff testified that she believed her weight was what caused the problems with her knees. Tr. 462. She said she tried to eat right but the steroid injections caused her to gain weight. *Id.*

The ALJ then began asking Plaintiff some questions. Tr. 466. However, the ALJ had numerous questions about whether all of Plaintiff's medical records had been provided to him, and determined he would have Plaintiff's counsel provide any records that were not already in the record. Upon receipt of those records, the ALJ indicated he would resume the hearing, hear testimony from the VE, and possibly ask Plaintiff some additional questions. *See* Tr. 466-77.

### 2. The June 13, 2013 Administrative Hearing

The ALJ resumed the hearing on June 13, 2013. Plaintiff and her counsel appeared at the hearing, along with VE Karl Weldon. Tr. 413. Plaintiff's counsel noted the record now included all of Plaintiff's medical information. Tr. 415.

Plaintiff testified that she had not worked since the last hearing and that she had had viscous injections in her knees since that hearing. Tr. 421. She noted those injections had not helped alleviate her knee pain. *Id.* Plaintiff indicated she had the same issues that she had discussed at the February hearing. She noted her knees were aching so much she could hardly sit at the hearing. Tr. 422-23. She stated she was scheduled to have one more shot in her right knee

and that, if it did not help, she would have a knee replacement. Tr. 423. She noted a recent visit to the emergency room ("ER") when her leg had given out and stated the doctor there indicated arthritis may have "shut [her] right knee down." Tr. 424.

VE Weldon then testified. Tr. 425-34. The ALJ posed a hypothetical question to the VE that had him assume an individual the same age as Plaintiff with her same educational and work background. Tr. 427. That individual could lift 20 pounds occasionally, 10 pounds frequently, and could stand, sit, or walk six of eight hours. That person would also have the following limitations: pushing and pulling in the lower extremity would be occasional; climbing ropes, ladders, and scaffolds would be never; climbing stairs would be occasional; stooping would be frequent. *Id.* The hypothetical individual would need to avoid concentrated exposure to fumes and hazards. Tr. 431. The ALJ asked the VE whether there would be work available for such an individual. The VE responded in the affirmative, noting there would be good jobs at the unskilled level. Tr. 431. He provided the following examples: hand packaging occupations (DOT number 753.687-038, 2900 jobs in the upstate area of South Carolina and 522,000 jobs nationwide); inspecting occupations (DOT number 741.687-010, 2200 in the upstate area of South Carolina and 310,000 in the United States); fast-food-worker jobs (DOT number 311.472-010, 4200 in the upstate area of South Carolina and 2,100,000 jobs nationwide). *Id.* The VE noted these jobs were representative of the type of jobs that would meet the described limitations and noted that he believed these jobs to be consistent with the Dictionary of Occupational Titles. *Id.* In response to a question from the ALJ, the VE also noted these jobs were consistent with SSR 2000-4p. Tr. 432.

The ALJ gave a second hypothetical that assumed the same limitations as the first except the walking and standing would be modified down to four hours out of eight. Tr. 432. With those

limitations, the VE opined the hypothetical individual could not perform the jobs he had outlined. *Id.* The VE testified he believed there would be other jobs available that such a person could perform, however. He noted jobs at the sedentary unskilled level, such as inspecting occupations (DOT number 726.684-050, 1600 jobs in the upstate area of South Carolina and 243,000 jobs nationally); sorting occupations (DOT number 521.687-086, 1300 positions in the upstate area and 334,000 nationally); and packing occupations (DOT number 559.687-014, 1900 jobs in the upstate area of South Carolina and 252,000 jobs nationwide). Tr. 432-33. The VE again indicated these jobs would be consistent with the DOT and SSR 2000-4p. Tr. 433.

The third hypothetical posited by the ALJ was the same as the second one, except it was modified in that the individual would have "difficulty attending the workstation on a daily basis[,]" and needed to elevate a leg at the sole discretion of the individual. Tr. 433. The VE opined there would be no work available to such an individual with such limitations. *Id.*

## II.    Discussion

### A.    The Commissioner's Findings

In his July 11, 2013, decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since May 31, 2011, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative joint disease of the bilateral knees, degenerative disc disease of the lumbar spine, and obesity (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20

CFR 416. 967(b) with certain additional limitations. Specifically the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for 6 hours each out of an 8-hour workday. The claimant can occasionally push and/or pull with the lower extremities. The claimant can never climb ladders, scaffolds, or ropes. The claimant can occasionally kneel, crouch, crawl, and climb stairs. The claimant can frequently stoop. The claimant must avoid concentrated exposure to fumes and hazards.

5.     The claimant has no past relevant work (20 CFR 416.965).

6.     The claimant was born on February 9, 1966 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have any past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since May 31, 2011, the date the application was filed (20 CFR 416.920(g)).

Tr. at 87-100.

The Appeals Council granted Plaintiff's request for review of the ALJ's decision, permitting Plaintiff to submit comments and any new and material evidence. Tr. 8. Upon review of additional evidence placed in the record, the Appeals Council "adopted the ALJ's findings or conclusions regarding whether [Plaintiff] was disabled." *Id.* The Appeals Council adopted the ALJ's RFC for Plaintiff, except for the exertional limitations. Tr. 9. The Appeals Council found Plaintiff has the RFC to "lift 10 pounds occasionally and less than ten pounds frequently, as well as stand and/or walk a combined total of two hours or sit for six hours in an eight-hour

workday." *Id.* The Appeals Council also considered Plaintiff's allegations that the ALJ demonstrated bias in his Order, but found no abuse of discretion by the ALJ. Tr. 9-10. The Appeals Council issued the following findings:

1. The claimant has not engaged in substantial gainful activity since May 31, 2011.

2. The claimant has the following severe impairments: degenerative joint disease of the bilateral knees, degenerative disc disease of the lumbar spine, and obesity, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3. The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: lift 10 pounds occasionally and less than ten pounds frequently, as well as stand and/or walk a combined total of two hours or sit for six hours in an eight-hour workday; occasionally push and/or pull with the lower extremities, never climb ladders, scaffolds, occasionally kneel, crouch, crawl, and climb stairs, frequently stoop, and avoid concentrated exposure to fumes and hazards.

4. The claimant's subjective complaints are not fully credible for the reasons identified in the body of the hearing decision.

5. The claimant has no past relevant work.

6. The claimant is 47 years old, which is defined as a younger individual, and has a high school education.

7. If the claimant had the capacity to perform the full range of work at the sedentary exertional level, 20 CFR 416.969 and Rule 201.21, Table No. 1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional impairments do not allow her to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform.

8. The claimant is not disabled as defined in the Social Security Act at any time through the date of the ALJ's decision (July 11, 2013).

Tr. 10.

B.  Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that SSI benefits are available to individuals who otherwise satisfy certain criteria not at issue here and are "disabled," defined as being:

> . . .unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff asserts the ALJ failed to properly evaluate her credibility and failed to consider all the evidence.[4] Plaintiff alleges the ALJ improperly applied SSR 96-7p by partially discounting her credibility because of her failure to keep medical appointments, failure to follow through with treatment recommendations, improper consideration of her activities of daily living ("ADLs"), and insufficient examination of all evidence.[5] The Commissioner submits her decision is based on substantial evidence and that the ALJ's credibility analysis was proper.

---

[4] Although listed as two issues, Plaintiff briefs those issues as one related to the credibility analysis, so the court considers them together.

[5] The Appeals Council adopted the ALJ's credibility findings, Tr. 8-9, and Plaintiff does not specifically challenge the Appeals Council's decision.

SSR 96-7p requires that prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain.  *See* SSR 96-7p, 1996 WL 374186; *see also* 20 C.F.R. § 416.929; *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. This part of the ALJ's analysis requires him to weigh Plaintiff's complaints against "all the available evidence, including [Plaintiff's] medical history, medical signs, and laboratory findings," as well as "any objective medical evidence of pain" and "any other evidence related to the severity of the impairment, such as evidence of [Plaintiff's] daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595 (internal quotation marks and citations omitted).

If the ALJ rejects a claimant's testimony about a claimant's pain or physical condition, he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight." SSR 96-7p; *see Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .").

   1. The ALJ's Credibility Findings

   Here, the ALJ properly set out his duty to assess the credibility of a claimant's statements concerning symptoms, quoting a portion of SSR 96-7p. Tr. 93. The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found her statements about the intensity and limiting effects of her symptoms were not fully credible. Tr. 92-93.[6] The ALJ then set out details of Plaintiff's testimony regarding her pain and the limitations she had noted, including her claim that her knees swelled daily and had constant pain, that she could walk only 200 feet before needing to rest, that she could sit only 30 minutes at a time, and could lift no more than five pounds. Tr. 92. The ALJ also noted Plaintiff's testimony that she regularly elevated her knees to relieve symptoms and that shots in the knees provided only temporary symptom relief. He further noted her testimony that she sometimes used a cane for walking, had periodic falls, poor sleep, hand arthritis, and breathing problems. *Id.*

---

[6] The ALJ found Plaintiff's claimed hand problems were not related to a medically determinable impairment. Tr. 93. The ALJ referred back to his findings that the medical evidence of record did not support a finding of rheumatoid arthritis in Plaintiff's hands. *See* Tr. 90 (noting an April 2010 test for rheumatoid arthritis had been negative, exs. 3F/2 (Tr. 251) and 1F/50 (Tr. 236), and there were no treatment notes by a rheumatologist or other treating sources diagnosing Plaintiff with rheumatoid arthritis).

As required by SSR 96-7, the ALJ fully explained the reasons for partially discounting Plaintiff's subjective claims, including references to the record medical evidence. *See* Tr. 93-94. The ALJ reviewed objective medical evidence and tests and found they did not support the extreme degree of physical limitation claimed by Plaintiff. Tr. 94. *See* 20 C.F.R. § 416.929 ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . .").

The ALJ found Plaintiff's degenerative joint disease of both knees, degenerative disc disease of her lumbar spine, and obesity were severe impairments, Tr. 89-90, that could be expected to cause some of the symptoms Plaintiff alleged, *id.* at 92. *See Craig*, 76 F.3d at 591-96. Continuing the analysis of her subjective complaints, however, the ALJ found the objective evidence regarding these impairments, as well as Plaintiff's reported ADLs, did not support a level of pain or incapacity to work at the level Plaintiff claimed. Tr. 92-93.

The ALJ noted the records did not indicate Plaintiff had regularly reported side-effects of her medications or complained of sleep problems. Further, the ALJ noted that no medical records prescribed or required that Plaintiff use a cane to walk. Tr. 93. The ALJ also noted the credibility of Plaintiff's subjective allegations was harmed by her failure to keep medical appointments and follow through with treatment recommendations. *Id.* In particular, the ALJ noted Plaintiff had visited New Horizon Family Health Services, Inc. ("New Horizon") in November 2011, but failed to visit them again, although the November 2011 treatment notes advised Plaintiff to follow up in two-to-three months. Tr. 93 (citing ex. 8F/1-2, available at Tr. 281-82). The ALJ also referenced the October 2012 notes from the University Medical Group Orthopedic Clinic that indicate Plaintiff refused anti-inflammatory medications when they were offered. Tr. 93 (citing 5F/2, available at Tr. 260, as well as the March 13, 2013 notes from a visit to the Ortho

Clinic of Greenville, 13F/2, available at Tr. 359). The ALJ further noted that Plaintiff had refused viscosupplementation[7] for her knee problem. Tr. 93-94 (citing 13F/9, available at Tr. 366). The ALJ then found that, the above reasons notwithstanding, Plaintiff's testimony of extreme limitations was not fully supported by the "radiologic evidence, physical examinations and activities of daily living." Tr. 94. In connection with this finding, the ALJ provided a detailed analysis of relevant medical records. *Id.*

### 2. The Parties' Arguments

In her appeal, Plaintiff principally focuses on the ALJ's findings that Plaintiff failed to keep some medical appointments and did not follow through with certain recommended treatments, pointing to additional evidence that calls these findings into question. *See* Pl.'s Br. 4-6. Plaintiff also ascribes error to the ALJ's consideration of her ADLs in the credibility finding and the ALJ's noting Plaintiff's "dramatic" appearance at the hearing. *Id.* at 6-8. Plaintiff then sets out some objective evidence she contents the ALJ improperly "discounted or ignored" in reaching his decision regarding Plaintiff's credibility. *Id.* at 8-10.

The Commissioner argues that Plaintiff's allegations of error would require that the court "re-weigh the evidence, and find Plaintiff's allegations and testimony more credible than the [ALJ] did." Def.'s Br. 1-2. The Commissioner appropriately notes that the court is not to reweigh evidence and submits the decision should be affirmed as it is based on substantial evidence. *Id.* at 2. After setting out details of relevant record evidence, the Commissioner cites to the ALJ's decision and the record evidence in support of her argument. *Id.* at 3-18.

---

[7] Viscosupplementation is a treatment for osteoarthritis of the knee that involves injecting a thick fluid called hyaluronate into the knee joint. "[I]t is thought that hyaluronate will improve the lubricating properties of the synovial fluid, reduce the pain from osteoarthritis of the knee, improve mobility, and provide a higher and more comfortable level of activity. http://my.clevelandclinic.org/health/treatments_and_procedures/hic_viscosupplementation (last visited Aug. 18, 2015).

At bottom, the court is to consider whether the Commissioner's decision is supported by substantial evidence and is free from legal error. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. Accordingly, the court first considers Plaintiff's argument that the ALJ improperly overlooked or discounted "numerous objective findings" in the record. Pl.'s Br. 8-10.

a.  Plaintiff's argument regarding the objective evidence

The ALJ explained his credibility findings by, *inter alia*, citing to numerous specific medical records that he found to undermine Plaintiff's credibility. Specifically, the ALJ cited records from Plaintiff's March 2013 visit to professionals at the Greenville Health System in which Plaintiff noted she was not in pain and that she was "doing better" and her physical therapist noted she was able to ambulate without an assistive device.[8] Tr. 94 (citing ex. 13F, available at Tr. 358-74). In discussing his findings, the ALJ noted, "Let there be no misunderstanding, I am mindful of the magnetic imaging revealing osteoarthritis with a complex meniscus tear; no doubt she has a significant impairment but not to the extent as she reported in the hearing." Tr. 94 (citing ex. 13F). *See* Tr. 371-72 (May 8, 2013 test results). The ALJ also references a 2012 magnetic imaging that revealed some degenerative meniscal tearing of the left knee. Tr. 93 (citing ex. 5F). *See* Tr. 261-62 (Sept. 7, 2012 MRI results indicating meniscal tear of left knee). The ALJ points out, however, that Plaintiff's physician who ordered the MRI—Chae Ko, M.D.—noted in his October 17, 2012 examination of Plaintiff that her left knee had no effusion and had a full range of motion. Tr. 93 (citing ex. 5F, available at Tr. 259-60). The ALJ further noted Dr. Ko found that x-rays of Plaintiff's right knee revealed mild degenerative changes, moderate patellofemoral degenerative changes bilaterally. Dr. Ko also found Plaintiff had a normal gait. Tr. 93 (citing ex. 5F). *See* Tr. 268-70 (Dr. Ko's notes from Plaintiff's July 11,

---

[8] The ALJ indicates this record is from Plaintiff's March 13, 2013 evaluation at Greenville Health System. However, these findings are contained in Plaintiff's March 20, 2013 visit to the Greenville Health System. Tr. 360-61. This does not impact the court's decision.

2012 visit noting Plaintiff had full range of motion and a normal gait as to both knees). The ALJ also noted that x-rays taken in 2011 indicated Plaintiff had a full range of motion in both knees and that she was ambulatory. The x-rays of Plaintiff's left knee revealed no acute injury or degenerative changes and x-rays of the right knee revealed degenerative changes. Further, the ALJ noted the x-rays of the lumbar spine disclosed normal alignment, mild narrowing and osteophyte formation at L3-4. Tr. 93 (citing exs. 1F and 11F).

Exhibits 1F and 11F are records from Plaintiff's visits to the Emergency Department of Cannon Memorial Hospital ("Cannon") from April 6, 2010 through February 1, 2011 (ex. 1F) and from April 12, 2009 through February 4, 2013 (ex. 11F), many of which are not relevant to the ALJ's analysis. *See* Tr. 186-236, 293-349. On April 13, 2011, Plaintiff went to the Cannon's ER after tripping over a trailer hitch and falling on both knees. Tr. 187. She was ambulatory on discharge. Tr. 188. On physical examination, Plaintiff's knees appeared normal with a full range of motion and mild tenderness. Tr. 189. The written results of the April 13, 2011 x-rays discussed by the ALJ are found at Tr. 191. An October 12, 2011 x-ray of Plaintiff's right knee revealed "mild to moderate" degenerative changes, but noted no joint effusion. Tr. 322. Cannon's records concerning the x-rays of Plaintiff's lumbar spine are found at Tr. 314. Tr. 314 (Dec. 15, 2011 report of lumbar spine x-ray). The ALJ also noted Plaintiff had been found to have a full range of motion of her lumbar spine without spasms. Tr. 94 (citing ex. 3F, available at Tr. 250-54).

In attempt to counter the ALJ's analysis, Plaintiff cites to several of her medical records that she claims support her allegations of debilitating pain. Pl.'s Br. 8-9. For example, Plaintiff cites to Tr. 260 as indicating she had "[l]imited flexion in left knee." Review of that October 17, 2012 record from Plaintiff's visit to Dr. Ko indicates that Plaintiff's left knee had no "effusion or

erythema. Range of motion is pretty full with extension of 0 and then flexion, she is slightly limited to about 120 degrees." Tr. 259-60. Plaintiff also directs the court to Tr. 269-70 for a record that indicates "[d]iffuse tenderness and bilateral patellar crepitus." Pl.'s Br. 9. However, the court notes that same record—from a July 11, 2012 visit to Dr. Ko—indicates Plaintiff has full, symmetric range of motion in both of her knees. Tr. 270. In addition, that July 11, 2012 record also indicates Plaintiff described her pain as "controlled" and noted she had "increased her mileage and [was] walking more." Tr. 269. Plaintiff also cites to the "Comprehensive Orthopedic Examination" performed by consulting examiner Roland Knight., M.D. in which Dr. Knight noted Plaintiff's right knee was "warm and tender to mild palpation." Tr. 252. However, Dr. Knight also found Plaintiff's range of motion was only slightly limited and found her impairments limited "long standing/long walking/repetitive stair climbing and squats[,]" but he did not find Plaintiff could not work. *Id.* In addition, the ALJ discussed Dr. Knight's report in detail in discussing his findings regarding Plaintiff's residual capacity for work. *See* Tr. 96.

The court has considered Plaintiff's challenges and has reviewed the record, including all records specifically referenced by Plaintiff in her brief. Based on this review and applicable law, the court finds the ALJ's credibility analysis is supported by substantial evidence and was sufficiently specific. The ALJ discussed the two-part test for evaluating pain and analyzed the entire case record. Tr. 92-94. Substantial evidence supports the ALJ's credibility determination that the "diagnostic tests and physical examinations" establish limitations on Plaintiff, but not to the "dimension that one would expect to support the severity of limitations" Plaintiff claimed at the hearing. Tr. 94. The ALJ plainly found that Plaintiff had a "significant impairment" to her knee. *Id.* Much of the evidence to which Plaintiff points in her brief does nothing more than bolster that finding. Further, to the extent that Plaintiff attempts to point to selective records that

may support her subjective complaints, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. *See Craig,* 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

### b.  Plaintiff's argument concerning lack of treatment

Plaintiff also argues the ALJ erred in discounting her credibility based on her failure to obtain certain treatment or to follow up on recommended treatments. Pl.'s Br. 4-6. Plaintiff points specifically to the ALJ's findings that she failed to follow up after a November 2011 appointment at New Horizon and her refusal of certain medications and treatment modalities. Regarding the ALJ's finding that Plaintiff never followed up as recommended by New Horizon, Plaintiff points out that she could not always follow up with medical care due to income limitations. Additionally, she notes that, rather than return to New Horizon for follow-up, she returned to her former provider for treatment of her knee, Samaritan Health, in February 2012. Pl.'s Br. at 4-5; *see* Tr. 258, and noted at that time she had seen Richard Morgan, M.D., a sports medicine specialist, who had administered a steroid injection in her right knee, Tr. 258. Plaintiff submits the ALJ's focus only on her not going to New Horizon in follow up fails "to give the complete picture [and] does not afford the plaintiff a fair and impartial decision." Pl.'s Br. 5.

Regarding the ALJ's finding that Plaintiff had refused anti-inflammatory medications, Plaintiff points out her testimony that she was allergic to tramadol. Pl.'s Br. 5 (citing Tr. 457). The court notes, however, that tramadol is not an anti-inflammatory medication. Dr. Ko noted he had offered Plaintiff "anti-inflammatories *as well as* the Tramadol but she has refused them." Tr. 260 (emphasis added). The court finds no error here.

Regarding the ALJ's reference to Plaintiff's refusal of viscosupplementation treatment for her knee, Plaintiff points to her testimony that she did eventually have that procedure done. *See* Tr. 421 (testifying she had recently had viscous injections in her right knee that did not provide relief).[9] Nonetheless, the ALJ accurately noted Plaintiff had refused that treatment in April 2013. Tr. 93-94, *see* Tr. 366 (Dr. Ko's April 3, 2013 notation that he offered Plaintiff viscosupplementation, "which she refused"). The ALJ's reference to this refusal in considering Plaintiff's credibility was not error and does not change the court's finding that the Commissioner's decision is supported by substantial evidence.

Regarding Plaintiff's criticism of the ALJ's finding Plaintiff had failed to follow up with New Horizon after her November 2011 visit, the Commissioner allows that the ALJ may have been mistaken in that regard, because record evidence does indicate Plaintiff did seek further care through Samaritan Health, a former provider. Def.'s Br. 17; *see* Tr. 258 (Feb. 2012 visit to Samaritan). In any event, the court agrees with the Commissioner that such an oversight does not require reversal or remand of the Commissioner's decision. The ALJ's finding regarding Plaintiff's purported failure to follow up with treatment at New Horizon was but part of his credibility analysis. The court finds that substantial evidence supports the credibility finding. *See, e.g., Brim v. Chater*, 74 F.3d 1230 (4th Cir. 1996) (*per curiam*) (unpublished decision,

---

[9] According to questioning by Plaintiff's counsel at the June 13, 2013 hearing (the second administrative hearing), Plaintiff had received the viscous injections the week prior. It does not appear that treatment notes concerning these injections are in the record.

available at 1996 WL 10288) (holding that, although the ALJ misstated certain facts when assessing the plaintiff's credibility, remand was not appropriate because the errors "[did] not sufficiently infect his decision").

   c.   Plaintiff's argument regarding the impact of her ADLs on the credibility analysis

Plaintiff also contends the ALJ's credibility analysis is flawed based on his discussion of Plaintiff's ADLs in partially discounting her credibility. Pl.'s Br. 6-7. In discussing Plaintiff's credibility, the ALJ noted that Plaintiff's ADLs were limited. Tr. 94. Nonetheless, he noted Plaintiff had reported attending church and visiting friends, both indicating the ability to sit, stand, and walk. *Id.* The ALJ also highlighted Plaintiff's hearing testimony that she watched television, made her bed, and cleaned her toilet and sink. *Id.* Plaintiff argues the ALJ's reference to Plaintiff's watching television as being inconsistent with disabling knee pain is "ludicrous." Pl.'s Br. 6. Further, Plaintiff notes that her household chores are extremely limited and that she testified she could not always go to church because of the pain involved. *Id.* (citing Tr. 455). Plaintiff also references her testimony regarding additional limitations on her activities, such as her problems riding in a car and her never going shopping. Pl.'s Br. 7.

Plaintiff's arguments do not convince the court that the ALJ's decision is erroneous or not based on substantial evidence. In the credibility analysis and other places in the decision, the ALJ addressed relevant evidence concerning her ADLs and their impact on her claims. *E.g.*, Tr. 92, 94. Abstractly, the court agrees with Plaintiff that watching television does not indicate an ability to work. However, in context of his decision, the ALJ arguably noted Plaintiff watched television in support of her ability to sit. *See* Tr. 449 (Plaintiff's stating she would "sit and watch a little TV" upon awakening). Considering the ALJ's review of Plaintiff's ADLs in conjunction with the balance of his credibility determination, the court finds no error. The Commissioner's

decision is supported by substantial evidence. *See Johnson v. Barnhart*, 434 F.3d at 658 (noting that a claimant's routine activities were inconsistent with her complaints); *Blalock v. Richardson*, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

The court finds the ALJ's thorough review of the record as a whole, including his articulated reasons for discounting Plaintiff's claims, supports affirmance of the Commissioner's decision to deny benefits. *See Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000) (noting ALJ may discount a claimant's complaints if inconsistencies are apparent in the evidence as a whole).

d. Plaintiff's argument regarding bias

Finally, Plaintiff argues the ALJ "demonstrated bias" in his decision when he noted in the decision that Plaintiff was "'dramatic in her appearance in the hearing room coming in dramatically limping and elevating her legs during the hearing.'" Pl.'s Br. 7-8 (quoting Tr. 94). Plaintiff submits that the ALJ's use of the word "dramatic" suggests the ALJ believed Plaintiff was "acting" and demonstrates his bias "particularly in light of his misrepresentation of the evidence or his failure to consider all the facts in writing his [decision], as discussed above." Pl.'s Br. 8. As an initial matter, as discussed in detail above, the court finds the ALJ did not "misrepresent" or "fail to consider" appropriate facts in reaching his decision. The ALJ's decision is supported by substantial evidence.

Further, although an ALJ's credibility determination may not be based solely upon his observations of claimant at the hearing, it is permissible for an ALJ to "'consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.'" *Wheeler v. Colvin*, No. 1:13-CV-445, 2014 WL 2157458, *15 (D.S.C. May 23, 2014) (quoting SSR 96-7p); *see also Massey v. Astrue*, No. 3:10-2943, 2012 WL

909617, *4 (D.S.C. Mar. 16, 2012). Plaintiff attempts to distinguish *Wheeler* by noting the observation in that case was that plaintiff "sat quietly during the hearing." Pl.'s Reply 2, ECF No. 18. This distinction is unavailing. SSR 96-7p permits an adjudicator to consider his or her "observations of the individual as part of the overall evaluation of the credibility" of his or her statements. SSR 96-7p. These observations are not limited to observations that a claimant did *not* demonstrate symptoms. Rather, the Ruling counsels that the adjudicator (here, the ALJ) may consider his or her observations in conjunction with the record as a whole. Here, the ALJ observed Plaintiff's demeanor at the hearing and commented on his observations in his decision. However, as discussed above, the ALJ appropriately based his credibility finding on his review of the record as a whole, and not solely on his observations. Thus, the ALJ's reference to Plaintiff's demeanor at the hearing presents no error warranting remand.

In sum, the ALJ articulated well-supported bases upon which he concluded that Plaintiff was not entirely credible. The court rejects Plaintiff's argument to the contrary. The ALJ was able to observe the demeanor and determine the credibility of the claimant; "the ALJ's observations concerning these questions are given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984). The credibility determination is supported by substantial evidence.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section

1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), the Commissioner's decision is affirmed.

IT IS SO ORDERED.

August 20, 2015
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge